**No. 24-1453**

# United States Court of Appeals for the Federal Circuit

————————————————

NATIONAL STEEL CAR LTD.,

*Plaintiff-Appellant,*

v.

GREENBRIER-CONCARRIL LLC, GREENBRIER LEASING COMPANY, LLC, GREENBRIER-GIMSA, LLC,

*Defendants-Appellees,*

————————————————

*On Appeal from the United States District Court for the District of Oregon in Case No. 3:20-cv-01275-YY*

————————————————

**RESPONSE BRIEF OF APPELLEES GREENBRIER-CONCARRIL LLC, GREENBRIER LEASING COMPANY, LLC AND GREENBRIER-GIMSA, LLC**

J. PIETER VAN ES
pvanes@bannerwitcoff.com
MARC S. COOPERMAN
mcooperman@bannerwitcoff.com
JANICE V. MITRIUS
jmitrius@bannerwitcoff.com
BRIAN T. APEL
bapel@bannerwitcoff.com
BANNER & WITCOFF, LTD.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
(312) 463-5000

July 1, 2024                    *Counsel for Appellees*

## REPRESENTATIVE PATENT CLAIMS

### U.S. Patent No. 7,434,519:

22. A rail road gondola car comprising:
    a gondola car body carried by railroad car trucks for rolling motion along rail road tracks;
    said gondola car body having a longitudinal centerline;
    said gondola car body having a floor and a wall structure standing upwardly of said floor, said floor and said wall structure defining a lading receptacle;
    said gondola car body including a pair of lengthwise running side beams, said side beams defining portions of said wall structure;
    said side beams each having an upper margin, and a longitudinally running shear web member extending predominantly downwardly of said upper margin;
    *said floor including at least one **floor panel**;*
    *said at least one **floor panel** and said **shear web member** being **directly mated together***;
    a centersill;
    said center sill has a pair of spaced apart webs extending downwardly from said at least one floor panel, said webs each have an upper margin mated to said at least one floor panel;
    said gondola car includes at least one cross-bearer, said at least one cross-bearer has at least one web, said web of said at least one cross-bearer has an upper margin mated directly to said at least one floor panel; and
    said at least one floor panel defines an upper flange of said centersill and said at least one cross-bearer, and a bottom flange of at least one of said side beams.

### U.S. Patent No. 7,878,125:

1. A rail road gondola car, said rail road gondola car having:
    a lading containment receptacle mounted on a pair of spaced apart rail road car trucks for rolling motion along rail road tracks in a longitudinal direction;

first and second side beams defining first and second side walls of
    said receptacle;

a ***deck*** defining a floor of said lading containment receptacle;

an array of cross-members extending cross-wise underneath said
    deck between said first and second side walls;

said array of cross-members including at least a first cross-
    member;

said first cross-member having a first end and a second end;

said first end being adjacent to said first side beam, said first
    cross-member of said array of cross-members extending
    laterally inboard of said first end;

said first side beam including a predominantly upstanding web
    running lengthwise along said car;

an array of longitudinally spaced upstanding stiffeners mounted
    to reinforce said first side wall;

said array of longitudinally spaced upstanding stiffeners including
    a first stiffener;

*said **upstanding web** of said first side beam **extending**
    **upwardly of said deck***;

said first side beam having a first web extension, said first web
    extension extending predominantly downwardly of said deck,
    and said first web extension being mounted to said first end of
    said first cross-member;

there being web continuity between said first web extension and
    said upstanding web;

said first web extension having a lower margin downwardly
    distant from said deck;

said first web extension being narrower at said lower margin than
    nearer to said deck, said first web extension having broadening
    wings to either side of said first end of said first cross-member.

18. A rail road gondola car, said rail road gondola car comprising:

a car body carried by rail road car trucks for rolling motion in a
    longitudinal direction along rail road car tracks;

a first side wall and a second side wall spaced apart cross-wise;

a first end wall and a second end wall spaced apart in the
    longitudinal direction;

a substantially flat ***deck***;

an array of cross-members, said array including a first cross-member;

said deck having a first end at which said first end wall is mounted, and a second end at which said second end wall is mounted;

said deck having a first laterally outboard margin and a second laterally outboard margin;

said first side wall has a first side wall web running along said first laterally outboard margin, *said first **side wall web** being **directly connected** to said **deck***;

said second side wall has a second side wall web running along said second laterally outboard margin, said second side wall web being directly connected to said deck whereby said deck defines a bottom flange of said first and second side walls;

said first cross-member having a laterally running web, said laterally running web being directly connected to said deck, said laterally running web extending downwardly of said deck, whereby said deck defines an upper flange of said first cross-member; and

at least half of said deck is formed from a single monolithic piece of steel sheet.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2024-1453 |
| **Short Case Caption** | National Steel Car Ltd. v. Greenbrier-Concarril LLC |
| **Filing Party/Entity** | GREENBRIER-CONCARRIL LLC, GREENBRIER LEASING COMPANY, LLC, GREENBRIER-GIMSA, LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/01/2024

Signature: /s/ J. Pieter van Es

Name: J. Pieter van Es

i

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| GREENBRIER-CONCARRIL LLC | N/A | The Greenbrier Companies, Inc. |
| GREENBRIER LEASING COMPANY, LLC | N/A | The Greenbrier Companies, Inc. |
| GREENBRIER-GIMSA, LLC | N/A | The Greenbrier Companies, Inc. GIMSA Division Industrial, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

---

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable        ☐    Additional pages attached

| | | |
|---|---|---|
| Audra C. Eidem Heinze | Steven T. Lovett | J. Stephen Ravel |
| Lisa S. Carlson | Stoel Rives LLP | John R. Johnson |
| Nathan C. Brunette | Sven Stricker | Kelly Hart & Hallman LLP |

---

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☑  N    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable        ☐   Additional pages attached

| | | |
|---|---|---|
| N/A | | |
| | | |

iii

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ......................................................xi

INTRODUCTION ........................................................................ 1

STATEMENT OF THE ISSUES ................................................... 5

STATEMENT OF THE CASE ...................................................... 7

    A.   Using a side sill was the traditional gondola car design in the prior art. ...................... 7

    B.   The asserted claims require a side wall web that is in physical contact with a floor panel. .................................................... 9

    C.   The Accused Cars have traditional side sills. ................................................................ 12

    D.   The district court's construction of "floor panel." ................................................. 18

    E.   NSC amends its infringement contentions and Greenbrier provides its non-infringement positions. ............................ 26

    F.   The district court grants summary judgment for Greenbrier. ........................... 28

    G.   The district court denies NSC's motion for reconsideration of summary judgment. ................................................. 31

SUMMARY OF THE ARGUMENT ........................................ 34

STANDARD OF REVIEW .......................................................... 37

ARGUMENT ............................................................................ 38

iv

I.    THE DISTRICT COURT'S CONSTRUCTION OF "FLOOR PANEL" SHOULD BE AFFIRMED .............................................................. 38

    A.    Invited error bars NSC from challenging the district court's construction of "floor panel." ............................... 40

    B.    NSC has waived several claim construction arguments it raises on appeal. ....................................................... 42

        1.    NSC has waived the argument that Greenbrier supposedly agreed that "separate" floor panel extensions can be unconnected from the floor panel. ................. 43

        2.    NSC has waived the argument that Greenbrier supposedly agreed that the "floor panel" limitation could include extensions of something other than the floor panel. ........................................... 44

        3.    NSC has waived its claim construction arguments about "floor extensions." ................. 45

    C.    The district court's construction of "floor panel" was correct. ..................................... 49

        1.    The word "separate" in the district court's construction of "floor panel" never meant "unconnected." ............................... 49

        2.    Greenbrier never agreed that "separate" floor panel extensions can be unconnected from the floor panel. ................. 50

        3.    The district court did not construe or "reinterpret" "extension," which is not a claim term. ....................................... 51

4.   NSC's claim construction arguments about so-called "floor extensions" are substantively wrong. ........................................... 53

a.   Greenbrier never agreed that the claimed "floor panel" could include an extension of some other component or structure that is not the claimed "floor panel." ........................................... 53

b.   The proper construction of "floor panel" does not include extensions from a structure that is not the "floor panel." ............................................... 55

II.   THE DISTRICT COURT PROPERLY GRANTED GREENBRIER SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ALL ASSERTED CLAIMS .................................... 59

A.   NSC's entire case depended on the side post gussets of the Accused Cars allegedly being extensions of the claimed "floor panel." ............................................... 60

B.   Summary judgment of non-infringement was proper because NSC never presented any evidence that the side post gussets of the Accused Cars are extensions of the claimed "floor panel." ........................................................ 62

1.   NSC pointed to alleged evidence concerning only the "floor" limitation, not the "floor panel" limitation, which is the relevant claim language. ........................... 64

      2.    NSC's other arguments do not warrant reversal or vacatur. ................................................ 68

      3.    NSC wrongly asserts that it can show infringement even if it wins only one of its two appealed issues......................................... 71

**C.**    **Summary judgment of non-infringement was proper also because it is undisputed that the side post gussets of the Accused Cars do not extend from (i.e., contact) the floor sheets. .................................. 72**

      1.    The district court correctly explained the evidentiary basis for the "extensions" in its construction of "floor panel.".................................................. 73

      2.    NSC's arguments on appeal do not create a genuine dispute of material fact on infringement. ............................................ 75

**III.**  **THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO GIVE NSC ADDITIONAL DISCOVERY AFTER SUMMARY JUDGMENT ..................................................... 80**

**CONCLUSION** ........................................................................... 84

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................... 63

*Askan v. FARO Techs., Inc.*,
  No. 2022-2117, 2023 WL 4101351 (Fed. Cir. June 21, 2023) ............. 81

*Bio-Rad Labs., Inc. v. ITC*,
  998 F.3d 1320 (Fed. Cir. 2021) ............................................. 58

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
  224 F.3d 1308 (Fed. Cir. 2000) ............................................. 57

*Cal. ex rel. Dep't of Toxic Substances Control v. Campbell*,
  138 F.3d 772 (9th Cir. 1998) ................................................ 80

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005) ............................................. 70

*DeMendoza v. Huffman*,
  1 F. App'x 665 (9th Cir. 2001) .............................................. 83

*Eon-Net LP v. Flagstar Bancorp*,
  249 F. App'x 189 (Fed. Cir. 2007) ......................................... 83

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
  93 F.3d 1572 (Fed. Cir. 1996) .............................................. 76

*Fenner Invs., Ltd. v. Cellco P'ship*,
  778 F.3d 1320 (Fed. Cir. 2015) ............................................. 73

*Harris Corp. v. Ericsson Inc.*,
  417 F.3d 1241 (Fed. Cir. 2005) .............................. 41, 42, 48

*Hologic, Inc. v. SenoRx, Inc.*,
  639 F.3d 1329 (Fed. Cir. 2011) ............................................. 75

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009) ............................................. 75

*Intercontinental Travel Mktg. v. FDIC,*
  45 F.3d 1278 (9th Cir. 1994) ......................................... 44, 45

*Key Pharms. v. Hercon Labs. Corp.,*
  161 F.3d 709 (Fed. Cir. 1998) ....................................... 40, 41

*Lamle v. Mattel, Inc.,*
  394 F.3d 1355 (Fed. Cir. 2005) ..................................... 44, 45

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.,*
  874 F.3d 604 (9th Cir. 2017) ............................................. 37

*Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.,*
  541 F. App'x 964 (Fed. Cir. 2013) ..................................... 83

*Mosaic Brands, Inc. v. Ridge Wallet LLC,*
  55 F.4th 1354 (Fed. Cir. 2022) ......................................... 37

*Novosteel SA v. United States,*
  284 F.3d 1261 (Fed. Cir. 2002) ......................................... 48

*Outside Box Innovations, LLC v. Travel Caddy, Inc.,*
  260 F. App'x 316 (Fed. Cir. 2008) ..................................... 56

*Pac. Marine Ctr., Inc. v. Silva,*
  553 F. App'x 671 (9th Cir. 2014) ....................................... 82

*Schindler Elevator Corp. v. Otis Elevator Co.,*
  593 F.3d 1275 (Fed. Cir. 2010) ......................................... 42

*Stern v. SeQual Techs., Inc.,*
  840 F. Supp. 2d 1260 (W.D. Wash. 2012), *aff'd*, 493 F. App'x 99
  (Fed. Cir. 2012) ............................................................. 83

*Tennison v. Circus Circus Enters., Inc.,*
  244 F.3d 684 (9th Cir. 2001) ........................................... 83

*TNS Media Rsch., LLC v. Tivo Rsch. & Analytics, Inc.,*
  629 F. App'x 916 (Fed. Cir. 2015) ..................................... 83

*Traxcell Techs., LLC v. Sprint Commc'ns Co.,*
  15 F.4th 1121 (Fed. Cir. 2021) ......................................... 64

*VR Optics, LLC v. Peloton Interactive, Inc.*,
    No. 2021-1900, 2023 WL 2031213 (Fed. Cir. Feb. 16, 2023) ......... 42, 52

*WebZero, LLC v. ClicVU, Inc.*,
    392 F. App'x 863 (Fed. Cir. 2010) ........................................................ 80

## Rules

Fed. R. Civ. P. 56 ..................................................................................... 35

Fed. R. Civ. P. 56(a) ...................................................................... 46, 62, 63

Fed. R. Civ. P. 56(d) ........................................................................... 80, 83

## STATEMENT OF RELATED CASES

No other appeal in or from this case was previously before this or any other appellate court. No case known to counsel to be pending in this or any other tribunal will directly affect or be directly affected by this Court's decision in this case.

# INTRODUCTION

Greenbrier developed gondola railcars (the "Accused Cars") that have a conventional "side sill." This side sill is a long, single piece of flat steel rolled into an L-shape. The side sill connects the side walls to the floor sheets. That is, the side wall is connected to the side sill, and the side sill is connected to the floor sheets.

The district court granted summary judgment that the Accused Cars do not infringe. Specifically, the district court concluded there was no genuine dispute of material fact that the Accused Cars lack a limitation undisputedly required by every asserted claim: that the side wall contact the "floor panel."

NSC advocated for the construction of "floor panel" that the district court adopted. When the district court construed "floor panel," the dispute it resolved was whether floor sheets, and any extensions of the "floor panel," needed to be connected specifically in an abutting (i.e., end-to-end) fashion as opposed to some other connection type. Accepting NSC's proposed construction, the district court construed "floor panel" to mean "one sheet, or a plurality of sheets joined together, and may also include one or more extensions, which may be integral, or which can be

separate." On appeal, NSC neither argues this construction is wrong, nor proposes an alternative construction for "floor panel."

Because it was undisputed that the side walls of the Accused Cars do not contact the floor sheets, NSC changed its infringement position to focus on the "side post gussets" in the Accused Cars. The structure of these gussets is also undisputed—they are intermittently spaced, five-by-seven-inch steel plates (gussets) that are part of the side posts on the outside of the cars. These gussets ***do not contact*** the floor sheets. Rather, there is a gap between the floor sheets and the side post gussets (the side sill is in this gap).

The relevant claim language requires the side walls to contact the "***floor <u>panel</u>***." But during discovery and at summary judgment, NSC focused on a different claim limitation—"floor." NSC argued that the side post gussets are (1) "***floor*** extensions," (2) part of the "overall ***floor***", and (3) "functionally part of the ***floor***." But this is not evidence that the Accused Cars meet the limitation requiring that the side wall contact the "floor ***panel***." As the district court correctly determined, "floor" was not the claim term at issue—the claim term at issue was "***floor panel***."

Whether the side post gussets are part of the "floor," part of the "overall floor," or "functionally part of the floor" was, and is, immaterial.

NSC ties itself in knots, alleging what it says are two claim construction errors. But when unraveled, what's left is NSC's complete lack of evidence of infringement for the "floor panel" limitation. NSC's arguments are belated, improper attempts to broaden the meaning of "floor panel" to include structure that neither is part of a "floor panel," nor touches a "floor panel," and therefore would cover anything.

Instead of seeking a different construction of "floor panel," NSC insists the district court "reinterpreted" the words "separate" and "extensions." Those words are not claim terms themselves; they appear in the construction of "floor panel." According to NSC, the "floor panel" limitation supposedly can include structure that does not touch the floor panel (because of the word "separate") or can include an "extension" of something other than the floor panel (because the word "extension" is unmodified).

By framing this appeal around claim construction, instead of around facts and evidence at summary judgment, NSC runs head-first into the invited error rule and waiver. NSC cannot complain on appeal

about a claim construction it successfully proposed; and many of NSC's claim construction arguments were never presented to the district court, and thus are waived. And NSC's framing cannot undo the fact that it never argued that the side post gussets in the Accused Cars were "extensions" of the "floor panel." Instead, NSC only argued that the side post gussets were "extensions" of a different claim term (not at issue on appeal): the "floor." NSC made that choice below, and it must live with that choice now.

## STATEMENT OF THE ISSUES

1.    Whether NSC is barred by the invited error rule from challenging the district court's construction of "floor panel," when the portion of the district court's construction NSC complains about on appeal is exactly what NSC itself successfully proposed to the district court.

2.    Assuming invited error does not apply, whether the district court correctly construed the "floor panel" limitation.

3.    When NSC's entire case depended on the side post gussets of the Accused Cars being part of the claimed "floor panel," whether the district court properly granted Greenbrier summary judgment of non-infringement of all asserted claims, when (i) NSC presented no evidence that the side post gussets of the Accused Cars were extensions of the claimed "floor panel," and NSC's evidence concerned only a different claim term; and (ii) it was undisputed that the side post gussets of the Accused Cars do not extend from (i.e., contact) the floor panel.

4.    Whether the district court abused its discretion in denying NSC additional discovery after summary judgment, when (i) NSC never filed a Rule 56(d) motion; (ii) Greenbrier provided its non-infringement

positions during discovery; and (iii) the district court received during claim construction and summary judgment a combined 415 pages of briefing, 4 days of oral argument, and 838 demonstrative slides, including supplemental summary judgment briefing specifically on the "floor panel" limitation.

## STATEMENT OF THE CASE

### A.    Using a side sill was the traditional gondola car design in the prior art.

"Gondolas are generally open-top railcars that have two side walls, two end walls, and a floor." Appx986-987 at ¶ 16. Gondolas are used to carry "lading," such as scrap steel or crushed rock, among other things. Appx7.

The "Background" section of the Asserted Patents describes the design of traditional prior-art gondolas, Appx101 at 1:10-57, a representation of which is shown below in Figure 1 and Figure 2.[1] Appx1020-1021.

---

[1] In this brief, "Figure" refers to graphics/visuals, and "Fig." refers to figures from the Asserted Patents.



**Figure 1 – Graphical Representation of Prior-Art Gondola (Appx1020)**



**Figure 2 – Graphical Representation of Prior-Art Gondola (Appx1021)**

As shown above, prior-art gondola designs include two side beams, a floor, and end walls, which together define an open-topped container for lading. Appx101 at 1:12-16. The side beams "tended to be deep beams having a top chord, a side sill, and a vertical web extending between the top chord and side sill." Appx101 at 1:21-23. The side sills connect to the vertical side wall web and also connect to the floor panel. Appx101 at 1:21-23.

The side sill "may include a lengthwise running member that defines the lower bounding member of the side beam," and, thus, "run[s] substantially the entire length of the side beam." Appx101 at 1:36-40. This lengthwise running member "tend[s] to function as the lower flange of the side beam." Appx101 at 1:41-43. The side sill can take various shapes, such as the form of an angle iron. Appx101 at 1:51-53.

## B.    The asserted claims require a side wall web that is in physical contact with a floor panel.

The Asserted Patents have identical specifications and figures, and relate to railroad freight cars, including gondolas. Appx7 at n.1; Appx58-122; Appx124-189. NSC sought to patent a design that joined the side wall web directly to a portion of the floor panel. Appx101 at 2:20-22.

9

Shown below in Figure 3 is a graphical representation of the patented gondola, based on Figs. 3b, 3c, and 4b of the '519 Patent. Appx63-65; Appx302; Appx987 at ¶ 18; Appx1023.



**Figure 3 – Graphical Representation of NSC's Patented Gondola (Appx1023)**

As can be seen, in the Asserted Patents, the side wall web (referred to as "web 114" and shown in blue above) is in physical contact with the floor panel (44) (shown in purple above) without the use of an intervening side sill. Appx106 at 11:66-12:33; Appx63-65.

There is no dispute that all of the asserted claims expressly "require that some part of the 'side wall web'[2] of the car [be] in physical contact with the 'floor panel' or 'deck.'"[3] *See* Appx11. For example, claim 22 of the '519 Patent and claim 18 of the '125 Patent require the floor panel and side wall web to be "***directly mated***" or "***directly connected***" together. Appx122 at 43:1-2; Appx189 at 44:30-37 (emphases added). Similarly, claim 1 of the '125 Patent requires the side wall be "***extending upwardly*** of" the floor panel, Appx188 at 41:13-14 (emphasis added), which the district court construed to mean, in part, "extending from," Appx50-51, and which NSC agrees (and does not appeal) requires the side

_____

[2] The asserted claims use the terms "shear web member" ('519 Patent), "upstanding web" ('125 Patent, claim 1), and "side wall web" ('125 Patent, claim 18), but NSC makes no arguments about distinctions in these claim terms, and NSC points to the same structure in the Accused Cars as satisfying all these limitations. Appx4753-4762; Appx4774-4779; Appx4783-4794; Appx4807-4815. Accordingly, the parties and district court used "side wall web" to refer to the claimed "shear web member," "upstanding web," and "side wall web."

[3] The '519 Patent claims use the term "floor panel" and the '125 Patent claims use the term "deck," but the parties agree that "floor panel" and "deck" have the same meaning. Appx13; Appx45.

11

wall web to physically contact the floor panel, Appx287; Appx1925 at 100:14-19.

### C.    The Accused Cars have traditional side sills.

Greenbrier's Accused Cars have traditional side sills. These side sills are connected to the side sheet and the floor sheet. Representations of the Accused Cars are below, in Figure 4 and Figure 5. Appx2666.



**Figure 4 – Graphical Representation of Greenbrier's Accused Cars (Appx2666)**



**Figure 5 – Graphical Representation of Greenbrier's Accused Cars (Appx1020)**

The outsides of the Accused Cars include several side posts (i.e., vertical structures that help stiffen the sides) spaced apart intermittently along the length of the exterior of the car. Appx5834-5836 at ¶¶ 1121-1125; Appx5375 at ¶ 50; Appx6034.

Toward the bottom of each side post are two small steel plates, also on the outside of the cars, each about five by seven inches, called side post gussets. Appx5834-5837 at ¶¶ 1121-1127. The annotated photos below in Figure 6 and Figure 7 identify the side posts, and show (in white boxes) the approximate size and location of some of the side post gussets on one exemplary Accused Car:

13



**Figure 6 – Accused Car with Approximate Size and Location of Side Post Gussets Annotated with White Rectangles Added (Appx5837)**



**Figure 7 –Enlargement of Excerpt of Figure 6 Above Labeling Side Post Gussets (White Rectangles) (Appx5837)**

The intermittent spacing of the side post gussets on the outside of the Accused Cars is shown below in Figure 8, an overhead view of the Accused Cars with the side posts and other components removed.

14



**Figure 8 – Overhead Graphical Representation of the Floor Sheets, Side Sills, and Side Post Gussets of the Accused Cars (other components removed) (Appx2670)**

The side post gussets of the Accused Cars (shown in green above) are not part of, or in physical contact with, the floor sheets. As shown below, Greenbrier's Accused Cars have an intervening side sill between the side sheet and the floor sheet—i.e., the same side sill (sometimes referred to as an "angle" or "angle iron") found in the prior art. The side sill in the Accused Cars is a single discrete object, formed by rolling a single long piece of flat steel until it has an L-shape. Appx5160 at 102:3-103:22; Appx5381 at ¶ 68; Appx5412 at ¶ 196.

15



**Figure 9 – Graphical Representations of Greenbrier's Accused Cars (Appx2667)**

As shown above in Figure 4 and Figure 9, the side post gussets in the Accused Cars (which are only on the exterior of the car) connect the side posts to the side sill. Appx5835 at ¶ 1124. This is also shown below in Figure 10, which is an excerpt of an engineering drawing for Greenbrier's Accused Cars, taken at the side post locations:



**Figure 10 – Annotated Excerpt of Engineering Drawing of Accused Cars (Appx2558; Appx6034)**

The side post gussets in the Accused Cars are unconnected to—i.e., not in physical contact with—the floor sheets. This fact is also shown, in

Figure 11 through Figure 13 below, in which the side sill has been removed:



**Figure 11 – Graphical Representation of Greenbrier's Accused Cars (side sill removed) Showing Side Post Gussets Unconnected to Floor Sheets (Appx2668)**



**Figure 12 – Graphical Representations of Greenbrier's Accused Cars (side sill removed) Showing Side Post Gussets Unconnected to Floor Sheets (Appx2669)**



**Figure 13 – Overhead Graphical Representation of the Floor Sheets and Side Post Gussets of the Accused Cars (Appx2672)**

### D.    The district court's construction of "floor panel."

NSC's statements about what happened during claim construction at the district court are incomplete, lack context, and (at times) are incorrect.

At claim construction, the parties had two disputes regarding the "floor panel" limitation.

First, the parties disputed whether a "floor panel" comprised primarily "sheets," as Greenbrier proposed, or "pieces," which NSC proposed. The district court sided with Greenbrier, Appx45-48, and NSC does not appeal that decision.

Second, although the parties recognized that a floor panel could include "extensions," the parties disputed *how*—not *whether*—the components of a floor panel, including any extensions, must connect to one another. Under Greenbrier's proposed construction, if a "floor panel" had extensions, those extensions had to be "abutting." That is, Greenbrier proposed that any extensions must be joined to the floor panel, end-to-end, without overlapping. Such "abutting" is illustrated below, which shows a butt joint (right), contrasted with a lap joint (left) where one item overlaps the other:



**Figure 14 – Representation of Lap Joint vs. Butt Joint (Appx16)**

On this second dispute, the district court agreed with NSC. The district court concluded "abutting" was not required because it believed the patents described an abutting connection as permissive. Appx17.

At claim construction, NSC did not argue that an extension of the floor panel did not need to touch or contact the floor panel. Instead, NSC's arguments were solely about whether the extension of the "floor panel"

needed to "be integral or 'abutting,'" and whether the extension needed to be a "sheet." Appx278.

This was because NSC's infringement argument, at that time,[4] was that, in the Accused Cars, the floor sheets, the side sill, and the side post gussets, all together comprised the claimed "floor panel." NSC illustrated what it alleged was the claimed "floor panel" in the Accused Cars:



**Figure 15 – NSC's Original Infringement Theory Showing Three Contacting Components (Appx278)**

And as NSC conceded, the composite structure it pointed to as the "floor panel" was not "abutting"—the side sill (B in the above) overlapped (but

---

[4] As discussed below, *infra* at pp.25-27, after claim construction, NSC changed its infringement contentions because, under the court's claim construction, the side sill in the Accused Cars could not be part of the "floor panel."

did not abut) the floor sheet (A in the above)—and the side post gusset (C in the above) is "not a sheet"—it "is a plate." Appx278-280.

NSC expressly admitted that any "extensions" must "attach," i.e., touch or connect, to the floor sheets. Appx1845-1846 at 20:23-21:1 (NSC's counsel stating that floor panel extensions can be integral, "or you can use a narrower piece of material and you can ***attach*** these separate gussets" (emphasis added)). As the district court properly noted, NSC's objection to "abutting" was that "abutting" requires "***not only*** 'touching' but specifically connected end-to-end in a particular way:

> So one of the other big disputes between the parties is the use of "abutting" in Greenbrier's construction. Their construction requires that the floor extension must be abutting, or I guess all sheets of the floor, in their position, must be abutting one another.
>
> And it's clear from their -- the rest of their positions and their arguments that when they use the word "abutting," they mean more than just touching or connected together. They are using "abutting" to mean a butt joint or a butt weld, and exclude everything else.

**Figure 16 – Excerpt of NSC's Counsel's Statements During Claim Construction (Appx1836 at 11:14-23) (highlighting added)**

In arguing that a floor panel extension neither had to be "abutting" nor a sheet, NSC argued that the extensions "can be a separate piece in

the form of a gusset welded in place." Appx279. In other words, NSC relied on the specification's description that the "floor panel extensions" could be "gussets that are cut separately and welded in place after the fact." Appx279-280.

Thus, both parties understood (or at least did not raise during claim construction) that the floor sheets and extensions of the "floor panel" must touch or be connected in some way.[5] The parties' dispute about "abutting" was about **how** the touching or connection was made, not **whether** touching was required in the first place.

Although the district court's initial claim construction order resolved the two then-disputed issues regarding "floor panel," Appx45-48, under the district court's initial construction, a floor panel's extensions were limited to extensions that were integral—i.e., formed by trimming the floor panel stock. Thus, this initial construction did not allow for extensions of the "floor panel" to be separate pieces later joined

_____

[5] Whether a floor panel extension must touch the floor panel (which NSC now disputes on appeal) is a wholly different issue from whether the side wall web must touch the floor panel (which all asserted claims require and which has never been disputed).

or connected to the rest of the "floor panel." Still, the district court correctly noted that the "extensions" were "extensions" of the "floor panel," not of some other structure:

> Additionally, the floor panel may have extensions.  ECF 1-1, at 51; ECF 1-2, at 52. "Extensions **140** may be formed by trimming the floor panel stock, such that extensions **140** are integral parts of floor panel **44**, rather than being joined after-the-fact as gussets welded in place."  ECF 1-1, at 51; ECF 1-2, at 52.  They also may be "fabricated piecemeal, as stub plates, and welded in planar abutment to . . . [a] floor sheet."  ECF 1-1, at 59; ECF 1-2, at 60.

**Figure 17 – Excerpt of District Court's Claim Construction Order (Appx46)**
**(highlighting added)**

Shortly following the district court's initial claim construction, NSC and Greenbrier both sought reconsideration. Appx10; Appx2491-2503. Greenbrier requested reconsideration of the "abutting" issue (as explained above), but the district court denied Greenbrier's request. Appx30-32.

At the same time, NSC argued that the district court's initial construction was wrong because it required a floor panel's extensions to be integral, and did not allow floor panel extensions to be cut separately from the floor panel and then later joined or connected to the floor panel after the fact. Appx2493 ("the exclusion of extensions that are 'joined

after-the-fact as gussets welded in place,' or 'fabricated piecemeal, as stub plates,' would be overly narrow and incorrect").

The district court granted NSC's motion and revised its construction of "floor panel" as follows:

> A "deck" or "floor panel" can be one sheet, or a plurality of sheets joined together, and may also include one or more extensions, which may be integral, or which can be separate.

Appx32.

The district court's revised construction was NSC's "alternativ[e]" proposed construction for "floor panel." Appx2494.

separate." Alternatively, if the Court's view is that the word "sheet" remains necessary,[1] NSC submits that NSC's proposed construction should be adopted, but with the words "piece" and "pieces" replaced with "sheet" and "sheets": A "deck" or "floor panel" can be one sheet, or a plurality of sheets joined together, and may also include one or more extensions, which may be integral, or which can be separate."

**Figure 18 – NSC's Proposed Construction of "floor panel" to the District Court**

Although NSC lost earlier on the "pieces"-versus-"sheets" issue, NSC does not appeal that aspect of the district court's "floor panel" construction. Thus, the portion of the district court's construction of "floor

panel" that NSC now complains about on appeal is exactly what NSC itself successfully proposed to the district court. Appx32; Appx2494.

Contrary to NSC's assertions, this construction did not "permit[] floor panel extensions which are not in contact with the floor panel." NSC Opening Appeal Brief ("Br.") 11. As can be seen above, that was not an issue presented to the district court. Rather, the district court simply clarified that the extensions of the "floor panel" need not be integral, but could be "fabricated piecemeal" and "joined after-the-fact." Appx46-47; Appx17-18. The district court noted that limiting floor panel extensions to only integral extensions "leaves out the possibility that an extension may be separate from the floor panel, which certainly was not what the court intended." Appx32.

NSC complains that Greenbrier "previously agreed, during both rounds of claim construction briefing, that 'separate' did not require physical touching" and that "extensions" were simply "'floor extensions,' not floor panel extensions." Br. 8, 10, 11, 18-20, 33, 45. NSC likewise alleges that Greenbrier "understood, and admitted to the district court in its briefing, that 'separate floor extensions' include 'floor extensions' that

are 'unconnected to the rest of the floor panel.'" Br. 8. NSC makes similar allegations repeatedly throughout its brief. *E.g.,* Br. 10-11, 18-20, 33, 45.

NSC is wrong. NSC's purported support comes from two passages from Greenbrier's claim construction briefs. *See* Br. 8, 10, 11, 18-20, 33, 45 (citing Appx326; Appx2524). But in each of these passages—in the portions NSC omits in its quotations—Greenbrier is explaining what "separate" extensions ***cannot*** be. Greenbrier did not agree that separate floor panel extensions could be unconnected to the floor panel they supposedly extend. To the contrary, Greenbrier stated that "cannot be a proper understanding," that such a position was "erroneous," that "the patent does not contemplate such a wide-ranging reading," and that "the opposite i[s] true." Appx326; Appx2524.

### E.    NSC amends its infringement contentions and Greenbrier provides its non-infringement positions.

Following claim construction and reconsideration of claim construction, NSC changed its theory of infringement.[6] Instead of

---

[6] NSC likely changed its infringement theory because, after losing on other issues, NSC could not maintain that the side sill in the Accused Cars was part of the "floor panel. Specifically, NSC lost the (i) "pieces"-versus-"sheets" issue for the "floor panel" limitation, *supra* at pp.17-25;

contending that three contacting, connected components (labelled A, B and C in the diagrams below) together made up the "floor panel," NSC's new position was that only two unconnected components (the floor sheets (A) and the side post gussets (C)) comprised the floor panel, as shown in Greenbrier's demonstratives below:

| NSC's Pre-Claim Claim Construction Infringement Theory (Oct. 2020) | NSC's Post-Claim Claim Construction Infringement Theory (July 2022) |
|---|---|
|  | |
| Appx12325 (Greenbrier summary judgment demonstrative) | Appx12326 (Greenbrier summary judgment demonstrative) |

**Figure 19 – Comparison of NSC's Infringement Theories**

*See also* Appx278 (NSC accusing the side sill as being part of the "floor panel"); Appx4833-4834 at ¶ 43 (NSC's expert opining the side sill is not part of the "floor panel").

---

and (ii) claim construction of a different claim term: "side sill," Appx44-45, neither of which NSC appeals.

In response to NSC's new theory, Greenbrier explained, during fact discovery, why its Accused Cars did not infringe under NSC's new theory. For example, Greenbrier stated in an interrogatory response, that "the side post gusset [of the Accused Cars] ***does not contact*** the floor panel . . . It is thus ***not an extension*** of the floor ***panel*** (i.e., it is not a floor panel extension) or otherwise part of the floor panel." Appx11778 (emphases added); *see also* Appx11817; Appx11854; Appx11875; Appx11915; Appx11947; Appx11967; Appx12009; Appx12042; Appx12064; Appx12093; Appx12119-12120. And Greenbrier's technical expert reiterated this point during expert discovery. Appx5404 at ¶ 155. Greenbrier was steadfast and never "adjusted" its theory of non-infringement, as NSC alleges, Br. 13-14, heading into summary judgment.

### F.    The district court grants summary judgment for Greenbrier.

After the parties fully briefed summary judgment, the district court held two days of oral arguments. Appx39 at n.3. The district court then issued an order noting that "the parties dispute the meaning of parts of the court's claim construction order regarding the claim terms 'deck' and 'floor panel,'" and that "the parties . . . seem to disagree about the

28

meaning of the terms 'extensions' and/or 'separate' in the court's claim construction order." Appx11615-11616. The district court ordered supplemental briefing specifically on "whether it is necessary for the court to construe the terms 'extensions' and 'separate' and, if so, what the process should be for doing so." Appx11616.

In ordering supplemental briefing, the district court rejected NSC's prior "argu[ment] that the court's claim construction order conclusively established the meaning of the terms 'extensions' and 'separate,'" as extensions that are not in contact with the floor panel, stating that NSC was "not correct." Appx11616.

After the parties submitted supplemental briefing, the district court held a third day of oral argument, including on whether additional claim construction was needed for the "floor panel" term. *See* Appx3.

After supplemental briefing and additional oral argument, the district court granted Greenbrier's motion for summary judgment of non-infringement of all asserted claims. Appx27. In its decision, the district court confirmed its previous construction of "floor panel" and correctly explained why it was not "necessary to refine, revisit, or otherwise clarify the court's previous construction of the terms 'floor panel' or 'deck.'"

29

Appx21-25. The district court also correctly rejected NSC's assertions that, in resolving the "abutting" issue, the district court had supposedly already decided that Greenbrier's "side post gussets were floor panel extensions." Appx20-21. The district court also correctly explained that "the term 'separate' in reference to the floor panel extension was meant to distinguish from extensions that were 'integral,' as [NSC's] motion for clarification on the court's original claim construction order recognized." Appx21. The district court confirmed that its construction of "floor panel" allowed for extensions of the "floor panel" to be (i) integral—formed by trimming the floor panel stock—or (ii) separate, i.e., formed separately and joined after the fact to the "floor panel." Appx20-25. And the district court correctly found that NSC "never posited during claim construction that its use of the term 'separate' in reference to a floor panel extension meant that the two pieces did not have to physically touch." Appx21.

The district court then compared the properly construed claims to the undisputed structure of the Accused Cars. Appx18-27. The district court correctly found there was no genuine dispute of material fact that Greenbrier did not infringe because the Accused Cars do not have direct contact between a "side wall web" and a "floor panel." Appx27.

In sum, NSC's infringement theory required the side post gussets in the Accused Cars to be floor panel extensions to meet the requirement, present in all asserted claims, that the side wall web contact the floor panel.[7] But the Accused Cars have intervening structure—the side sill—between the side post gusset and the rest of what NSC alleged comprised the "floor panel." Thus, the side post gussets are not in contact with the "floor panel" and are not extensions of the "floor panel." Because the side post gussets are not extensions of the "floor panel," the Accused Cars "are missing the limitation that the 'side wall web' be connected to or directly mated to a 'floor panel' or 'deck.'" Appx27.

### G. The district court denies NSC's motion for reconsideration of summary judgment.

After the district court granted summary judgment, but before it entered final judgment, NSC sought leave to file a motion for reconsideration. Appx13152-13156. Greenbrier opposed. Appx13157-

---

[7] NSC argued literal infringement only for this limitation; NSC never argued under the doctrine of equivalents that the Accused Cars have a side wall web contacting a floor panel.

13162. Before the district court ruled on NSC's motion for leave, NSC filed its motion for reconsideration. Appx13163-13178.[8]

In NSC's motion for reconsideration, NSC argued, for the first time, (i) that "the parties and the court have agreed all along that 'extensions' . . . refer to 'floor extensions' and not 'floor panel extensions,'" and (ii) that "Greenbrier [allegedly] long ago conceded that 'separate' . . . includes components that do not touch." Appx13164. As explained above, *supra* at pp.18-26, neither is true.

The district court denied NSC's motion for leave and its motion for reconsideration, noting that "analysis" of the Accused Cars "and the terms 'floor panel' and 'deck' . . . has been extensively litigated," and that "[b]oth parties have had ample opportunity to be heard." Appx3. The district court correctly found that NSC "ha[d] not explained why the arguments raised in its [motions for leave and reconsideration] could not have been raised earlier, especially in light of the court's previous order

---

[8] Because the district court never granted NSC leave to file a motion for reconsideration, Greenbrier did not file an opposition. Appx13444-13445.

32

requesting supplemental briefing on the precise issue on which it now seeks reconsideration." Appx3.

The district court entered final judgment for Greenbrier. Appx1.

This appeal followed.

## SUMMARY OF THE ARGUMENT

NSC tries to frame this appeal as being about claim construction. But the aspects of the district court's claim construction NSC now complains about were proposed by NSC itself. Under the invited error rule, NSC is barred from challenging this construction on appeal. NSC complains about two words in the district court's construction of the "floor panel" limitation. Those two words—"extensions" and "separate"—were in NSC's proposed construction. If NSC wanted the district court to ascribe the meaning to them that NSC now advocates for, it was incumbent on NSC to properly present those arguments to the district court.

Setting aside invited error, the district court's construction of "floor panel" was correct and should be affirmed. NSC repeatedly, and incorrectly, complains that Greenbrier allegedly had agreed with NSC about the meaning of "separate" and "extension." For one, NSC never argued this to the district court until after summary judgment, so these arguments are waived. But they are also categorically incorrect; there was never any such agreement. Also, NSC never litigated as a claim construction issue its alleged error about the word "extension" (i.e., that

the word "extensions" in the district court's construction of "floor panel" is supposedly not limited to "floor panel extensions"). Rather, NSC only ever litigated this issue as an evidentiary issue under Rule 56. NSC cannot raise new claim construction issues for the first time on appeal.

On the merits, NSC's claim construction arguments fail. NSC alleges the district court "reinterpreted" words *in its construction* of "floor panel," but not any words in the actual *claims*. The district court did no such reinterpretation. It did not reinterpret "separate"; the word never meant 'unconnected' and NSC never argued that it did. Until now. Nor did the district court construe the word "extension"; rather, it compared its construction to the Accused Cars and found no infringement. And NSC's argument that the district court somehow imported a "floor panel" limitation into its construction of "floor panel," is nonsensical and unsupported in law.

What this appeal is really about is NSC's lack of evidence of infringement. All asserted claims undisputedly require that the side wall web of the railcar contact the "floor panel." To try and meet this limitation, NSC focused its entire case on structures in the Accused Cars called side post gussets, that NSC alleges are "extensions." But even

under NSC's construction, NSC did not present evidence of literal infringement (and NSC did not argue doctrine of equivalents for the "floor panel" limitation).

This Court can affirm the district court on either of two independent grounds.

First, NSC only ever argued that the side post gussets in the Accused Cars (the alleged "extensions") were part of the "floor," which is a different claim term than "floor *panel*"; the "floor" is not relevant on appeal. Because NSC did not present any evidence that the side post gussets are extensions of the "floor *panel*," NSC could not show infringement—irrespective of the meanings of "separate" and "extensions."

Second, it was undisputed that the side post gussets do not extend from (i.e., contact) the rest of what NSC alleged was the "floor panel" in the Accused Cars. Thus, there was no genuine dispute of material fact that the side post gussets were not floor panel extensions, and therefore NSC could not show infringement.

Finally, the district court correctly denied NSC additional discovery after summary judgment. Not only did NSC forfeit its right to such

discovery by not filing a proper Rule 56(d) motion, but NSC had fair notice of Greenbrier's position, and the district court afforded NSC exceptional due process.

The district court's judgment should be affirmed.

## STANDARD OF REVIEW

Greenbrier agrees that a district court's claim construction is reviewed de novo, and subsidiary fact-finding is reviewed for clear error, *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1361 (Fed. Cir. 2022), but Greenbrier disagrees that the district court "relied only on the intrinsic record," as NSC alleges. Br. 25.

The Ninth Circuit reviews denial of discovery in connection with summary judgment for abuse of discretion. *See Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 612 (9th Cir. 2017).

## ARGUMENT

## I.    THE DISTRICT COURT'S CONSTRUCTION OF "FLOOR PANEL" SHOULD BE AFFIRMED

A district court's claim construction is reviewed de novo, and subsidiary fact-finding is reviewed for clear error.

The district court construed the claim term "floor panel" to mean "one sheet, or a plurality of sheets joined together, and may also include one or more extensions, which may be integral, or which can be separate." Appx32. This was NSC's proposed construction. Appx2494.

NSC does not ask this Court to reverse that claim construction. Nowhere in its opening brief does NSC propose any alternative construction of "floor panel" different from the district court's. Instead, NSC complains about two words in the construction: "separate" and "extensions"—words the district court used because NSC asked it to. The invited error rule bars NSC from challenging this construction on appeal. Further, many of NSC's arguments are waived for failure to timely present them to the district court.

But even if considered, NSC's claim construction arguments fail. Beginning with faulty premises, NSC suggests that Greenbrier previously agreed with NSC's two main arguments on appeal. But NSC

is playing a game of "gotcha"—by manufacturing a purported agreement on the substantive scope of one of the most critical claim terms in this case. For one, NSC did not argue at the district court that these issues were previously agreed-to until its post-summary-judgment motion for reconsideration—meaning the argument has not been preserved for appeal. *See* Appx13168-13173. More importantly though, Greenbrier did not so agree.

NSC also wrongly characterizes the district court as belatedly injecting two additional limitations into its construction of "floor panel"— the same construction NSC sought. The district court did no such thing. Other than clarifying early on during claim construction that floor panel extensions need not be integral—something never disputed and immaterial to the case—the district court did not "refine, revisit, or otherwise clarify [its] . . . construction of . . . 'floor panel'" at summary judgment. Appx21. The district court did not construe "extensions," which is not a claim term. Rather, the district court's analysis about the word "extensions" in its construction—again, a word that NSC proposed—was when the district court compared the construed claims to the Accused Cars. Appx21-27. Nevertheless, even if reviewed as a claim

construction matter, NSC's arguments still fail because the district court's construction is proper.

Finally, the district court never decided, as a claim construction matter, that the claim term "floor panel" could somehow (nonsensically) include a component that is an extension of something other than the floor panel. That issue was only ever litigated as a factual question, in the context of whether NSC's evidence raised a genuine dispute of material fact. As discussed below in Section II.B, NSC's failure to present sufficient evidence on the "floor panel" limitation is an independent ground for affirmance, distinct from any claim construction issues.

Because NSC is barred by invited error from challenging the construction of "floor panel" on appeal, because many of NSC's arguments are waived, and because the district court correctly interpreted the claim term, the district court's construction of "floor panel" should be affirmed.

## A. Invited error bars NSC from challenging the district court's construction of "floor panel."

"The invited error rule, which is a branch of the doctrine of waiver, holds that a party may not complain on appeal of errors that he himself invited." *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 n.1 (Fed. Cir. 1998) (cleaned up). "[A] party invite[s] an alleged error either by

asking the trial court to make a ruling, the result of which the same party later challenged on appeal, or by failing to present cognizable arguments or evidence in favor of its position to the trial court." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1258 (Fed. Cir. 2005). "The impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its face." *Key Pharms.*, 161 F.3d at 715 (Fed. Cir. 1998).

Here, NSC complains about the very construction it successfully persuaded the district court to adopt.[9] NSC asked the district court to include in its construction of "floor panel" the phrase "and may also include one or more extensions, which may be integral, or which can be separate." Appx2494. On appeal, however, NSC now takes issue with the words "separate" and "extensions"—words that NSC invited the district court to adopt. Br. 2-3; Appx2494.

---

[9] As explained above, *supra* at pp.17-25, although the entirety of the district court's construction of "floor panel" was not what NSC originally sought, the portion of the district court's construction of "floor panel" that NSC complains about on appeal is entirely what NSC proposed.

Because the district "court adopted [NSC's] proposed construction," NSC cannot seek to change that construction on appeal. *See VR Optics, LLC v. Peloton Interactive, Inc.*, No. 2021-1900, 2023 WL 2031213, at *7 (Fed. Cir. Feb. 16, 2023); *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1282 n.1 (Fed. Cir. 2010) (refusing the patentee's request to "strike the phrase 'via electromagnetic waves' from the district court's construction of 'information transmitter'" because the patentee's proposed construction "to the district court included that very phrase"). And because NSC "fail[ed] to present cognizable arguments or evidence" to the district court about the meanings of "separate" and "extensions" NSC now advocates for on appeal, NSC's arguments are barred. *See Harris Corp.*, 417 F.3d at 1258.

## B.   NSC has waived several claim construction arguments it raises on appeal.

Even if this Court holds that NSC is not entirely barred by invited error from challenging the district court's construction of "floor panel," many of the claim construction arguments NSC raises on appeal are waived because they were not properly made to the district court.

42

### 1.    NSC has waived the argument that Greenbrier supposedly agreed that "separate" floor panel extensions can be unconnected from the floor panel.

NSC repeatedly accuses Greenbrier of having "admitted," "agreed," or "conceded" that floor panel extensions could be unconnected to the floor panel from which they supposedly extend. *E.g.*, Br. 1-2, 8, 18-21, 32, 33, 45. But NSC has waived this argument by failing to raise it until after the court granted summary judgment.[10]

NSC did not argue in principal or supplemental summary judgment briefing that Greenbrier supposedly agreed that a floor panel extension could be unconnected to the rest of the floor panel. Rather, NSC presented this argument to the district court for the first time in its proposed motion for reconsideration after the court granted Greenbrier summary judgment of non-infringement. Appx13171-13173.

In denying NSC's motion for leave to seek reconsideration and its motion for reconsideration, the district court found that NSC had "not explained why the arguments raised in its . . . motions could not have

---

[10] Not only is this argument waived, but it is also categorically wrong; Greenbrier never agreed to this. *Infra* Section I.C.2.

been raised earlier, especially in light of the court's previous order requesting supplemental briefing on the precise issue on which it now seeks reconsideration." Appx3. Because NSC's argument—that Greenbrier supposedly agreed that a floor panel extension could be unconnected to the floor panel—was "first raised . . . on motion for reconsideration in the district court," the argument is waived. *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1359 n.1 (Fed. Cir. 2005); *Intercontinental Travel Mktg. v. FDIC*, 45 F.3d 1278, 1286 (9th Cir. 1994) ("Raising an issue for the first time on motion to reconsider is not considered adequate preservation of the issue at a summary judgment stage.").

> **2.** *NSC has waived the argument that Greenbrier supposedly agreed that the "floor panel" limitation could include extensions of something other than the floor panel.*

NSC also repeatedly argues that Greenbrier previously agreed that the "floor panel" limitation could include a component that is an extension of something other than the floor panel. Br. 2, 8, 11, 17-18, 21, 27-30, 31-32, 50. This argument also is waived[11] because NSC presented

---

[11] This argument is also both waived and wrong; Greenbrier never agreed to this either. *Infra* Section I.C.4.b.

this argument too for the first time in its post-summary-judgment motion for reconsideration. Appx13168-13169. Even though Greenbrier's positions were consistent and clear since well before discovery closed, *supra* at pp.26-28, NSC never before argued that Greenbrier supposedly agreed that a "floor panel" could include an extension of some other structure. Thus, NSC's argument is waived. *Lamle,* 394 F.3d at 1359; *Intercontinental Travel Mktg.*, 45 F.3d at 1286.

### 3.    *NSC has waived its claim construction arguments about "floor extensions."*

NSC wrongly, and for the first time on appeal, argues that the district court "reinterpreted an 'extension' to be limited to a 'floor <u>panel</u> extension' to the exclusion of a 'floor extension.'" Br. 28. The district court did no such thing—because this issue was not (and is not) a claim construction issue, but rather was (and is) an evidentiary issue (i.e., it is a question of whether NSC presented evidence on infringement to survive summary judgment). And, NSC's new claim construction arguments on this issue are waived.

The parties did not litigate—and the district court did not decide— whether the scope of the "floor panel" limitation can include a component that is an extension of something ***other than*** the floor panel. Rather,

45

Greenbrier argued, as a ***factual*** matter under Rule 56(a), that NSC's evidence did not create a genuine dispute of material fact because NSC's evidence (i) did not concern the disputed "floor panel" limitation; but instead (ii) concerned a different limitation ("floor") that was not the basis for summary judgment. The district court agreed. Appx25-27.

At summary judgment, despite being given chance after chance to present its arguments, NSC purposefully chose not to make any claim construction arguments about how or why the "floor panel" limitation should be construed to include a structure that extends from something other than the floor panel. Appx10006-10014. Greenbrier had made its positions clear during discovery and again at summary judgment. *Supra* at pp.26-28. But NSC chose to say nothing on this issue in its principal summary judgment briefing, and instead discussed an "overall floor"—a new, NSC-coined term that is nowhere in the Asserted Patents. Appx25-26; Appx10012-10014.

At oral argument for summary judgment, NSC again decided to say nothing on this issue despite being asked specifically and directly by the district court to address it:

> THE COURT: . . . I would like for NSC to respond to Greenbrier's argument that, as you just heard, this is -- must be an extension of the floor panel versus what Greenbrier has described is NSC's argument that it's an overall floor.

Appx11640 at 22:3-7. Rather than addressing the district court's specific question, NSC's counsel repeated arguments about the already decided "abutting" issue, and made irrelevant arguments about the "floor" and "overall floor." Appx11641-11651. NSC did not argue (as a matter of claim construction) that the scope of the "floor panel" limitation could include a component that extends from something other than the floor panel. Appx11641-11651. Instead, NSC exclusively responded that (as a factual matter) its theory and evidence that the side post gussets of the Accused Cars are supposedly "floor extensions" was sufficient to survive summary judgment. Appx11641-11651.

When the district court ordered supplemental summary judgment briefing on the "floor panel" limitation—and on the "extensions" issue specifically—NSC continued with more of the same. In its first

supplemental brief, NSC again presented no arguments about how or why the scope of the "floor panel" limitation—the actual disputed limitation—should (under *Markman* and *Phillips*, for example) include a component that extends from something other than the floor panel. Appx12136-12142. NSC chose (again) to focus on other factual issues, and on its supposed evidence concerning the irrelevant "floor" limitation. *Id.*

Only in its **second** summary judgment supplemental brief—the last filing either party made before the district court granted Greenbrier summary judgment and the functional equivalent of a sur-sur-reply brief—did NSC try to muster something that even arguably resembles a **claim construction** argument on this issue. Appx12289-12291.

But that was too late. "[P]arties must give a trial court a fair opportunity to rule on an issue other than by raising that issue for the first time in a reply brief," otherwise the argument is "waived . . . for purposes of [appellate] review." *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002). If NSC wanted "floor panel" to be construed as including an extension of something **other than** the floor panel, NSC should have "present[ed] cognizable arguments or evidence in favor of its position to the trial court." *Harris Corp.*, 417 F.3d at 1258. NSC did not.

48

Accordingly, waiver bars NSC from raising any claim construction arguments on the "floor extension"-versus-"floor panel extension" issue.

### C.    The district court's construction of "floor panel" was correct.

Notwithstanding invited error and NSC's waived arguments, the district court's construction of "floor panel" should be affirmed on the merits.

#### 1.    The word "separate" in the district court's construction of "floor panel" never meant "unconnected."

The district court construed "floor panel" as primarily comprising one or more "sheets" (typically large flat pieces of steel); and optionally including "extensions" that may be integral to the floor sheet, or "separate."

The word "separate" in the district court's construction of "floor panel" came from NSC. Appx22 at n.6.

During claim construction, NSC never argued (like it does in this appeal) "that its use of the term 'separate' in reference to a floor panel extension meant that the two pieces did not have to physically touch." Appx21. Rather, NSC used the word "separate" to explain what was undisputed: that a floor panel extension can be "***cut* separately**" from the

49

floor sheet (instead of being integral to it) "and welded in place after the fact." Appx108 at 16:48-52 (emphasis added); Appx279-280. Indeed, NSC urged the district court to use the word "separate" in its construction because, according to NSC, a different construction would "preclud[e] any non-integral extension from falling within the literal scope of the claims." Appx2493.

At summary judgment, the district court correctly confirmed that the term "separate" simply meant non-integral, and did not mean unconnected. Appx21 ("[T]he term 'separate' in reference to the floor panel extension was meant to distinguish from extensions that were 'integral.'").

### 2.    Greenbrier never agreed that "separate" floor panel extensions can be unconnected from the floor panel.

NSC repeatedly accuses Greenbrier of having "admitted" or "agreed" that floor panel extensions could be unconnected to the floor panel they supposedly extend. Br. 8, 10, 11, 18-20, 33, 45. Not only has NSC waived this argument by failing to raise it until after the court granted summary judgment, *supra* Section I.B.1, it is wholly untrue.

Greenbrier never agreed that "separate" floor panel extensions can be unconnected from the floor panel. Rather, Greenbrier has consistently

argued that any floor panel extensions must be extensions of the floor panel (as opposed to some other structure) and must be touching or in contact with the floor panel. Appx11778; Appx2564-2575; Appx11059-11064. The two passages NSC points to, Appx326, Appx2524, as purported support, are not.

As explained above, *supra* at pp.18-26, NSC's alleged support comes from Greenbrier explaining what "separate" extensions **cannot** be—that "separate" floor panel extensions cannot be unconnected to the floor panel they supposedly extend. Appx326; Appx2524. And NSC did not disagree with Greenbrier's position during claim construction. Rather, NSC consistently argued that floor panel extensions must be connected: i.e., they can be **cut** separately and then **later joined** to or connected to the floor panel. Appx279-280; Appx1845-1846 at 20:23-21:1; Appx2493.

### 3. The district court did not construe or "reinterpret" "extension," which is not a claim term.

NSC argues that the district court erred, as a matter of claim construction, when it allegedly "reinterpreted" the term "extension" to require a floor panel extension to extend from (i.e., contact) the floor panel. Br. 32-38. But the district court did not construe "extension"

because "extension" is not a claim term. Appx21-22.[12] Rather, the district court "compare[d] the construed claims" to the Accused Cars, Appx18, and concluded that the "side post gusset of [the] accused car is not an extension of the 'floor panel' or 'deck' as those terms are used in the patents and have been construed by the court, and therefore [Greenbrier's] cars do not infringe [NSC's] patents." Appx25. The district court's comparison of its construction of "floor panel" was procedurally proper, and substantively correct (as discussed below in Section II.C). *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 2021-1900, 2023 WL 2031213, at *7 (Fed. Cir. Feb. 16, 2023) (affirming "district court's reading of its construction [as] consistent not only with the language of its construction, but also the specification").

If this Court reviews the district court's analysis of "extension" as a matter of claim construction, the district court's judgment should still be affirmed because the correct construction of floor panel requires any floor panel "extension" to contact the floor panel, for the reasons explained

---

[12] NSC's argument that Greenbrier "advocate[ed] for the district court to refine its claim construction," Br. 13, is irrelevant because the district court made clear it did not do so, Appx21.

below in Section II.C (e.g., the specification uniformly and exclusively describes and depicts floor panel extensions as contacting the floor panel).

> 4. *NSC's claim construction arguments about so-called "floor extensions" are substantively wrong.*

NSC wrongly argues that the district court "reinterpreted an 'extension' to be limited to a 'floor <u>panel</u> extension' to the exclusion of a 'floor extension.'" Br. 27-31. NSC's new claim construction arguments on "floor extensions" are waived, *supra* Section I.B.3, and nonsensical.

> **a.  Greenbrier never agreed that the claimed "floor panel" could include an extension of some other component or structure that is not the claimed "floor panel."**

NSC repeatedly argues that Greenbrier previously agreed that the "floor panel" limitation could include a component that is an extension of something other than the floor panel. Not only is this argument also waived, *supra* Section I.B.2, it is not true.

The only evidence NSC cites in alleging Greenbrier's supposed agreement is the parties' and the district court's inconsistent use of the phrase "floor extensions," in passing, when arguing about ***other*** substantive aspects of the "floor panel" limitation. Br. 17-19 (citing

Appx31-32, Appx45-48, Appx322-325, Appx13167-13171); Br. 27-30 (citing Appx22-26, Appx31, Appx325, Appx1862, Appx323). But the parties also used the phrase "floor panel extensions." Appx1835 at 10:1-9; Appx1853 at 28:1-3; Appx1865 at 40:14-18; *see also* Appx281 (NSC identifying "floor panel extension 188" from Fig. 5d). And the parties only ever cited to the specification's description of "floor panel extensions."[13] Thus, the parties' and the district court's use of the phrase "floor extensions" during claim construction was shorthand, early in the case, before all the issues had been sharpened; and thus, the district court's reference to "floor extensions" was not "intentional," as NSC claims. Br. 29. NSC's infringement theory at the time didn't distinguish between "floor extensions" and "floor panel extensions," Appx278-281; so the parties didn't either.

Almost two years later—after completion of fact discovery, and after exchange of expert reports on the specifically disputed claim

---

[13]   Appx279-281; Appx323; Appx325-326; Appx1059; Appx1390; Appx2502 at n.2; Appx2522-2525; Appx25-27 (collectively citing Appx107-109 at 14:40-44, 16:42-53, 17:10-14; Appx114-115 at 27:30-42, 29:58-62, 30:18-24, 30:36-46, 30:59-31:4; Appx65-88 at Figs. 4b, 4h, 4i, 5d, 6c, 8k).

language—the parties and the district court were (understandably) more exacting in their discussion of the specific claim terms at issue. Indeed, after NSC lost on other claim construction issues and advanced a new infringement theory, the "floor extensions"-versus-"floor panel extensions" dispute came front and center. Appx12325-12326.

NSC's "gotcha" effort should be rejected. Greenbrier did not agree, and would never have agreed, to the overly broad and nonsensical position NSC now takes.

### b. The proper construction of "floor panel" does not include extensions from a structure that is not the "floor panel."

Putting aside wavier, *supra* Section I.B.3, NSC wrongly argues that the "extensions" in the district court's construction of "floor panel" need not be extensions of the "floor panel"—i.e., that they need not be "floor panel extensions"—but can instead be extensions of the "floor"—i.e., that they can be "floor extensions." Br. 27-32.

First, the claim term the district court construed was "floor panel." Appx28; Appx45. And in that construction, the object that the district court said could include one or more extensions was the "floor panel." Appx31-32; Appx46-48. Thus, the extensions are necessarily extensions

of the "floor panel" (the claim term being construed) and not some other structure. NSC tries to point to the "deck" limitation as a reason why "extensions" don't have to be extensions of the floor panel, Br. 31, 37, but NSC already conceded that "deck" and "floor panel" have the same meaning. Appx13; Appx45.

Second, NSC points to no support in the specification, which does not describe or depict extensions of any non-floor-panel components or structures as being part of the "floor panel." *See* Appx107 at 14:40-45; Appx114 at 27:30-35; Appx115 at 29:51-64, 30:18-26, 30:36-46. Rather, the specification describes a "floor panel" as optionally having "floor panel extensions," and not extensions of the floor or any other component or structure. *See* Appx107 at 14:40-45; Appx114 at 27:30-35; Appx115 at 29:51-64, 30:18-26, 30:36-46. Thus, the district court correctly interpreted the "floor panel" limitation to include extensions of the floor panel—but not extensions of some other structure that is not the "floor panel." *E.g.*, *Outside Box Innovations, LLC v. Travel Caddy, Inc.*, 260 F. App'x 316, 319-20 (Fed. Cir. 2008) (affirming construction when there was no intrinsic or extrinsic support "that allows for 'a bottom panel extending outwardly beyond the end panels'").

Third, NSC's position would render the "floor panel" limitation practically boundless. Under NSC's theory, any structure of the railcar that is an "extension" of something—no matter what that something is—would fall within the literal scope of the "floor panel" limitation simply because it is an "extension." For example, the specification discloses a "side web extension" of the side wall web that contacts the floor panel. Appx107-108 at 14:67-15:5 ("Side web extension member 146 may be mounted to the underside of floor panel 44."). Under NSC's theory, because this "side web extension" is described as a type of "extension," it would fall within the literal scope of the "floor panel" limitation—even though it is obviously not part of the floor panel.

Fourth, NSC's construction is contrary to the structure and wording of the claims. The claim terms "floor" and "floor panel" are different limitations with different scope: "floor" is broader and can include more than just the "floor panel"; and "floor panel" is narrower and does not necessarily include everything that is included in the "floor." Appx105 at 9:6-9, 9:14-34; Appx121-122 at 42:58-60, 42:67, 43:1-2. It is improper to incorporate structure from the broader "floor" claim term into construction of the different, narrower "floor panel" claim term. *See CAE*

*Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317-18 (Fed. Cir. 2000) (affirming summary judgment of no literal infringement because claim term "bottom plane" was narrower than "bottom" claim term, and accused product did not include a "bottom plane"); *cf. Bio-Rad Labs., Inc. v. ITC*, 998 F.3d 1320, 1330 (Fed. Cir. 2021) (rejecting patentee's overly broad construction of "sample" because it would encompass a "reagent," when the patent made clear that "a reagent is not a part of a sample, nor is it the same thing as a sample").

Finally, the district court's construction of "floor panel" to include floor panel extensions is not reading an additional limitation into "floor panel," as NSC argues. Br. 31. It is nonsensical to argue that a "floor panel" limitation was read into the construction of "floor panel."

## II.  THE DISTRICT COURT PROPERLY GRANTED GREENBRIER SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ALL ASSERTED CLAIMS

If this Court agrees with Greenbrier on either of the two alleged errors NSC raises on appeal (or concludes that invited error bars NSC's claim construction arguments), the district court's summary judgment of non-infringement must be affirmed.

To prevail in this appeal, NSC must win on both of its alleged claim construction errors. That is, NSC must establish: (i) that the floor panel "extension" in the district court's claim construction need not contact the floor panel; ***and*** (ii) the "extension" need not be an extension of the floor panel, but can instead be an extension of something else. If the "extension" must contact the "floor panel," (contrary to NSC's argument (i) above), NSC loses because the side post gussets in the Accused Cars undisputedly do not contact the floor panel. Or, if the "extension" must be an extension of the "floor panel" (contrary to NSC's argument (ii) above), NSC loses because it never presented evidence or argued that the side post gussets in the Accused Cars are extensions of the "floor panel."

But NSC loses on each of its alleged errors.

### A. NSC's entire case depended on the side post gussets of the Accused Cars allegedly being extensions of the claimed "floor panel."

NSC does not dispute that all asserted claims require that the "side wall web" ***contact*** the "floor panel." Appx11; *see also supra* at pp.9-12.

And the district court construed "floor panel" to mean "one sheet, or a plurality of sheets joined together, and may also include one or more extensions, which may be integral, or which can be separate." Appx32.

NSC's infringement theory at summary judgment was (i) that the claimed "side wall web" included the vertical portion of the side sill of the Accused Cars; and (ii) that the claimed "floor panel" included the floor sheets and the side post gussets of the Accused Cars. *E.g.*, Appx4757; Appx4760-4761. Specifically, NSC contended that the side post gussets were "extensions," and thus part of, the "floor panel." Appx4760-4761; Appx4833-4835 at ¶¶ 43-45. Below in Figure 20 is a graphical representation of NSC's arguments about which components allegedly comprised the floor panel.



**Figure 20 – NSC Considered the Floor Sheets (Purple) and Side Post Gussets (Green) to Be the "Floor Panel," But Not the Side Sill (Red) (Appx2566;** *see* **Appx2666)**

As illustrated above, NSC did not argue that the horizontal portion of the side sill (shown in red) was part of the claimed "floor panel." Appx25-26. Rather, the **only** way NSC argued that the Accused Cars supposedly have a side wall web contacting the floor panel was at the connection of the side post gussets shown in green (the alleged extensions) to the vertical portion of the side sill shown in red (the alleged side wall web), on the outside of the car. *E.g.*, Appx4761. This is shown in Figure 21 below and Figure 20 above.



**Figure 21 – NSC Alleged the Floor Panel Connects to the Side Wall Web on the Outside of the Car, Where the Side Post Gusset and Vertical Portion of the Side Sill Connect (Appx2567; *see* Appx2667)**

Therefore, NSC conceded that the only way it could show infringement of any asserted claim was if the side post gussets of the Accused Cars were "extensions" of the claimed "floor panel." Appx20. And NSC had to prove that the side post gussets were literally part of the "floor panel" because NSC never argued under the doctrine of equivalents that the Accused Cars have a side wall web contacting a floor panel.

**B.   Summary judgment of non-infringement was proper because NSC never presented any evidence that the side post gussets of the Accused Cars are extensions of the claimed "floor panel."**

To avoid summary judgment, NSC was required to show a "material" factual dispute. Fed. R. Civ. P. 56(a). "Only disputes over facts

that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Greenbrier moved for summary judgment based on the "***floor panel***" limitation—specifically the absence of direct contact between the "side wall web" and the "floor panel," as all asserted claims require. NSC responded by only pointing to purported evidence concerning the different "***floor***" limitation. But any dispute over the "floor" limitation was not a "material" dispute for purposes of summary judgment. Fed. R. Civ. P. 56(a). Thus, lacking any evidence from NSC to raise a material dispute about "floor panel," the district court properly granted summary judgment, which should be affirmed. Appx25-27.

If this Court affirms summary judgment on the ground that NSC's evidence concerned the wrong limitation, this Court need not decide whether a floor panel extension must extend from (i.e., contact) the floor panel. That is because if the alleged extensions in the Accused Cars are not extensions of the claimed "floor ***panel***" in the first place, then any dispute about the connectedness (or not) of floor panel extensions is

irrelevant. *E.g.*, *Traxcell Techs., LLC v. Sprint Commc'ns Co.*, 15 F.4th 1121, 1135 (Fed. Cir. 2021) (not deciding other appealed issues after affirming summary judgment of non-infringement).

> *1.    NSC pointed to alleged evidence concerning only the "floor" limitation, not the "floor panel" limitation, which is the relevant claim language.*

The district court granted summary judgment of non-infringement based on the "floor ***panel***" limitation, not the different "floor" limitation. These are different claim terms with different scopes and different requirements within the asserted claims. *E.g.*, Appx120 at 40:54-64; Appx121 at 41:29-30, 41:46-55. The term "floor" is broader and can include more than just the "floor panel"; and "floor panel" is narrower and does not necessarily include everything that is included in the "floor." Appx105 at 9:2-6, 9:14-18 ("[F]loor or flooring 32" "may include a floor panel 44."); Appx121 at 41:29-30, 41:46-55.

Instead of presenting evidence that the side post gussets of the Accused Cars were allegedly extensions of the claimed "floor ***panel***," NSC discussed only what it called "the overall floor"—a term not used in the specification, claims, or in any prior briefing. Appx10012-10014. NSC argued that "[t]he overall floor includes (1) the floor sheets, (2) the

horizontal legs of the angles, and (3) the floor extensions." Appx10012-10014. Then, NSC argued that the side post gussets are extensions of this made-up, newly coined "overall floor." Appx10012-10014. But irrespective of whether the side post gussets are "*floor* extensions," NSC had to present evidence that the side post gussets were extensions of the "floor *panel*," which is the relevant claim term.

This distinction matters; it is not a merely inconsequential choice of wording. The specification repeatedly refers to the extensions as "floor panel extensions." Appx107 at 14:40-41; Appx108 at 16:44-48; Appx109 at 17:10-14; Appx114 at 27:30-31; Appx115 at 29:16-24, 29:54-58, 30:18-31, 30:36-42. The word "extension" appeared in the district court's construction of the claim term "floor panel"—not "floor," which was not construed. Appx32. And the district court's claim construction order made clear that the "extensions" are extensions of the "floor panel." Appx46 ("[T]he floor *panel* may have extensions." (emphasis added)). But NSC presented no evidence that the side post gussets of the Accused Cars are extensions of the claimed "floor *panel*."

When the district court invited supplemental briefing specifically on the "extensions" issue, NSC continued to focus on the "floor"

limitation, instead of the "floor *panel*" limitation. In its supplemental briefing and at the following oral argument, NSC, again, did not argue that the side post gussets of the Accused Cars were "floor *panel* extensions" or "extensions of the floor *panel*" or the like.[14] Appx12137; Appx12139-12142; *see* Appx11740-11741; Appx11060 at n.3; Appx11642 at 24:3-15; Appx11643 at 25:3-7, 25:10-13, 25:16-23; Appx11644 at 26:4-20; Appx11645-11647 at 27:23-28:1, 28:23-29:1; Appx11651 at 33:7-15; Appx11658-11659 at 40:24-41:3.

NSC's expert testimony and finite element analysis ("FEA") failed to create a genuine dispute of material fact for the same reason—it did not concern the claimed "floor *panel*" limitation. Rather, as properly explained by the district court, NSC's expert's FEA concerned only the "floor" limitation. Appx25-26; Appx11066-11067; Appx10013-10014. NSC's expert opined only that the side post gussets of the Accused Cars "are functionally part of the *floor*." Appx12137 (emphasis added). Each of NSC's citations to and/or paraphrases of its expert's opinions address

---

[14] NSC might have made this tactical choice for purposes of invalidity, but NSC's motivations are irrelevant.

only the "floor" limitation. Appx12137; Appx12146-12147. NSC's expert said nothing about why, based on his analysis, the side post gussets of the Accused Cars are supposedly extensions of the "floor *panel*." Appx12137; Appx12146-12147.[15]

Now, on appeal, NSC tries calling the side post gussets all different types of "extensions," hoping one might stick. NSC calls them "floor extensions," "true extensions of the floor," "extensions [that] are functionally part of the floor," and "direct extensions of the floor." Br 14, 15, 43, 46, 47. NSC also calls them a "functional extension[s] of the floor sheet/other floor panel," "functional extensions of the floor sheet," "structural 'extensions' of the floor panel/deck/floor sheets," and "structural continuations of the floor." Br. 16-17, 40-41, 43, 44-45. But NSC's wordplay is not a substitute for evidence. Likewise, NSC's six-page explanation of its "Mitered Theory" and "Horizontal Leg Across Theory," Br. 38-44, fails to show a genuine dispute of material fact because neither

---

[15] NSC claims its expert's analysis was "unrebutted," Br. 21, 23, 43, but it was unnecessary at summary judgment for Greenbrier to present its expert's opinions rebutting this point since NSC's expert's testimony concerned the wrong claim limitation.

theory establishes the side post gussets of the accused cars are extensions of the "floor *panel*."

NSC's failure to present evidence regarding the "floor *panel*" limitation doomed NSC's entire case; the district court properly granted Greenbrier summary judgment of non-infringement of all asserted claims.

### 2. *NSC's other arguments do not warrant reversal or vacatur.*

On appeal, NSC argues for the first time that its "floor extensions" argument is a claim construction argument instead of a factual argument, hoping de novo review will make up for its evidentiary shortfall. As explained above, *supra* Section I.B.3, this court should reject NSC's ploy and refuse to consider NSC's claim construction arguments, presented for the first time on appeal.

NSC also repeats its same irrelevant evidence concerning the "floor" limitation or the NSC-coined, but unclaimed, "overall floor." Br. 14-15 (NSC admitting it argued only about the "overall floor" and that its expert's purported "scientific analysis" was only that the side post gussets of the Accused Cars were allegedly "functionally part of the floor," but not the floor *panel*); Br. 16-17 (identifying its expert's supposed

68

"technical findings that the gussets are structural continuations of the floor," but not the floor panel). Again, NSC's arguments fail because its evidence is about the wrong claim term.

And NSC's argument that the side post gusset "is a ***functional*** extension of the floor sheet/other floor panel" or the floor panel, Br. 40-41, 43-44 (emphasis added), is also newly raised on appeal and therefore is waived. *See* Br. 14 (NSC admitting its expert's purported "scientific analysis" was only that the side post gussets were allegedly "functionally part of the floor," but not the floor ***panel***). Moreover, NSC's argument is unsupported by the record, and fails to raise a genuine dispute of material fact on literal infringement. At the district court, NSC did not argue, and its expert did not opine, that the side post gussets were "functional extensions of the floor sheet," as NSC now tries to argue. Br. 43. Rather, NSC only argued about the (irrelevant) "floor."

Moreover, NSC's supposed "evidence" does not create a triable issue on literal infringement. NSC conspicuously characterizes its evidence as supposedly showing that the side post gussets are "functionally" extensions, but not that they are literally extensions of the floor panel. Again, NSC never argued that the Accused Cars have a side wall web

contacting a floor panel under the doctrine of equivalents. To avoid summary judgment, when it has pursued only literal infringement, NSC must do more than point to the function of side post gussets because "[t]o infringe an apparatus claim, the device must meet all of the structural limitations." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005) (affirming summary judgment of no direct infringement when the "claim . . . contain[ed] the structural limitation that the anchor seat contact bone," and the patentee did "not prove[] that [the defendant made] an apparatus with an anchor seat in contact with bone").

In short, NSC has purposefully chosen, at every turn, not to present evidence that the side post gussets of the Accused Cars are extensions of the "floor panel"—which is the relevant claim term. NSC's new arguments on appeal are waived and cannot remedy its prior failure. Because NSC failed to show a genuine dispute of material fact, the district court correctly granted Greenbrier summary judgment of noninfringement.

### 3. NSC wrongly asserts that it can show infringement even if it wins only one of its two appealed issues.

NSC must completely win all its appealed issues to warrant vacatur. NSC asserts that summary judgment should be vacated even if it wins only one of its appealed issues, Br. 23, 44-47, but NSC is wrong.

NSC first argues that it can show infringement, even "if an 'extension' must be a 'floor <u>panel</u> extension'" Br. 44-46. But NSC provides no explanation or support: NSC just says it's so. The only citations in Section III.A of NSC's opening brief are to five patent claims, Br. 44-46, but claim language is not evidence of infringement.

The only "reason" NSC offers for its position is the assertion that "separate" does not mean touching. Br. 44-46. But that assertion does not logically support the proposition that the side post gusset is a "floor panel extension." Even if the "floor panel extension" need not touch any other portion of the "floor panel," it still must **be** part of the "floor ***panel***." And since NSC has no evidence that the side post gussets of the Accused Cars are literally extensions of the floor panel, it is simply immaterial whether the side post gussets are "separate" if they are not "floor panel extensions" in the first place.

NSC next argues that it can show infringement even if a "floor extension" must touch "the remainder of the floor." Br. 46-47. But, again, this argument is directed to the wrong limitation. The relevant question is not whether the "extension" (whether a floor panel extension or extension of something else) touches the "floor" as NSC posits. The question is whether the "extension" touches the "floor **_panel_**"—because that is the claim limitation at issue. Put another way, whether an "extension" of something other than the "floor panel" touches a structure that is not a "floor panel" is immaterial. NSC's arguments do not create any genuine dispute of material fact.

### C.   Summary judgment of non-infringement was proper also because it is undisputed that the side post gussets of the Accused Cars do not extend from (i.e., contact) the floor sheets.

There is a second, independent ground for affirming summary judgment of non-infringement. The district court correctly held that Greenbrier did not infringe because the side post gussets of the Accused Cars (i) indisputably do not extend from (i.e., contact) the floor panel; (ii) are therefore not "extensions" of the "floor panel"; and (iii) are therefore not part of the claimed "floor panel." Appx18-27. Thus, there is no direct contact between the alleged side wall web and the "floor panel," as all

asserted claims require. Summary judgment of non-infringement should therefore be affirmed.[16]

> 1. *The district court correctly explained the evidentiary basis for the "extensions" in its construction of "floor panel."*

In comparing its construction of the asserted claims to the Accused Cars, the district court correctly explained that its use of "extensions" in its construction of "floor panel"—which, again, came from NSC—"was based on the description of the floor panel extensions in the patents' specifications." Appx17-18. The district court agreed that every time the inventors discussed floor panel extensions they described the extensions as extending from the floor sheet, either (i) by being "integral" with the floor sheet, or (ii) by being manufactured separately and then being "joined" or "welded" to the floor sheet." Appx107 at 14:40-44; Appx114 at 27:30-35; Appx115 at 30:18-24; *see also* Appx108 at 16:42-52; Appx115 at 29:52-62. *See Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1322-23

---

[16] If this Court reviews the district court's non-infringement analysis as a matter of claim construction, the district court's judgment should still be affirmed because the correct construction of floor panel requires any floor panel "extension" to contact the floor panel, for the reasons explained in this Section.

(Fed. Cir. 2015) (relying on "the context in which the term was presented and used by the patentee").

The district court also agreed that the figures uniformly show the floor panel extensions extending from (i.e., contacting) the floor sheet. For example, as shown below in Figure 22, an excerpt of Fig. 4b of the '519 Patent, shows the floor panel extension 140 (in yellow) in contact with, and extending from, the floor panel 44 (in red):



**Figure 22 – Annotated Excerpt of Fig. 4b of the '519 Patent Showing Floor Panel Extension 140 in Contact with Floor Panel 44 (Appx65)**

Other figures show the same configuration. Appx65 at Fig. 4c (showing extension 174 contacting floor sheet 44); Appx82 at Figs. 8d, 8e (showing extension 440 contacting floor sheet 346, and showing extension 474 contacting floor panel 344). Unlike the side post gussets of the Accused Cars (which do not contact the floor sheets), "the specification [of

74

the Asserted Patents] consistently and exclusively" describes and shows a floor panel extension extending from (i.e. contacting) the floor panel. *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1335-38 (Fed. Cir. 2011); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374-75 (Fed. Cir. 2009) (holding claim term "spike" limited to "an elongated structure having a pointed tip for piercing the seal, which tip may be sharp or slightly rounded" when the specification "repeatedly and uniformly" described the spike as such).

### 2. NSC's arguments on appeal do not create a genuine dispute of material fact on infringement.

Having not argued during claim construction that a "floor panel" could include unconnected "extensions," and having no evidence that the side post gussets of the Accused Cars are "extensions" of the floor panel under the district court's claim construction, NSC attacks the district court's summary judgment order by trying to relitigate claim construction for the fourth time. Br. 32-38. None of NSC's arguments warrant reversal or vacatur.

NSC's argument (that a floor panel extension need not contact the floor panel it is extending) would also mean that the "floor panel" limitation has no practical limit. That is, if a floor panel "extension"

broadly includes components that do not extend from the floor panel, as NSC proposes, then any "extension" of any component can be a floor panel extension. As the district court correctly found, that cannot be correct. Appx22 ("Adopting [NSC's] implicit premise—that an 'extension' of the floor panel does not have to physically contact the floor panel—would render the terms 'floor panel' or 'deck' essentially limitless as they could encompass potentially any part of a railroad car." (citing *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1578 (Fed. Cir. 1996)).

NSC argues that "[n]othing in the claim language" suggests that a floor panel extension must contact the floor panel, Br. 34, but the word "extension" is not a claim term.

NSC argues that "the specification explicitly discloses that the term 'extension' refers to a structure that does not physically touch the structure from which it extends." Br. 34. But as the district court properly found, the specification's contrasting description of a different structure, "side web extension," further supports that the floor panel extension must touch the floor panel it is extending. Appx26-27.

The specification takes great pains to explain how a "side web extension" can be considered a "side web extension" without contacting

76

the side wall web. It states that a side web extension: (i) is "mounted to the underside of [the] floor panel"; (ii) is "in general alignment with" the side wall web; (iii) is "directly opposite . . . the . . . side wall web"; (iv) is "substantially co-planar with" the side wall web; (v) receives "a tensile load [from the] side [wall] web"; (vi) minimizes the risk of having "a bending moment in floor panel 44 between the line of action of [side wall] web 114 pulling up on floor panel 44 and the line of action of [side] web extension 146 pulling down on floor panel"; (vii) is "mated to" the floor panel; and (viii) "tend[s] to discourage unduly eccentric transmission of stress from one to the other." Appx107-108 at 14:62-15:16.

In contrast to this careful, detailed description about "side web extensions," the specification contains no such details when describing "floor panel extensions"—instead depicting them uniformly as in contact with the floor panel, confirming that a "floor panel extension" must extend from (i.e., contact) the floor panel. Appx26-27.

NSC points to the specification's use of the permissive "may" for support that a floor panel extension need not touch the floor panel, Br. 30-31, 36, but that reliance is misplaced. All of NSC's citations to the specification that use the permissive "may" are describing that what is

77

optional is whether the floor panel extensions are integral with the floor panel, or whether they are non-integral. Br. 36 (citing Appx107 at 14:40-45; Appx114 at 27:30-35; Appx115 at 30:18-26, 30:36-46, 29:25-64). The specification never suggests that it is optional whether a non-integral floor panel extension extends from (i.e., contacts) the floor panel. Put another way, while a floor panel need not have floor panel extensions, and while floor panel extensions need not be integral, if a floor panel has non-integral floor panel extensions, those floor panel extensions must extend from (i.e., contact) the floor panel.

NSC also mischaracterizes Greenbrier's arguments. NSC asserts that "there is no requirement . . . that every piece of the 'floor,' 'deck,' or 'floor panel,' . . . must touch (or be joined) to every other piece of the floor, deck, or 'at least one floor panel.'" Br. 45-46. But the relevant claim term is "floor panel," not "floor." And the relevant structures here are the floor panel "extensions," not "every other piece" of the floor panel. Whether or how "other piece[s]" of the floor panel are connected is irrelevant, as is whether or how multiple floor panels are connected.

Finally, NSC confusingly argues that the district court required a floor panel extension to contact "another" floor panel. Br. 32. This

argument should be rejected for three reasons. First, NSC's argument makes no sense because it is unclear what NSC means by "another" floor panel. Second, NSC did not previously make this argument; NSC never argued that a floor panel extension could be its own, standalone "floor panel." Third, such a position is contrary to the specification, which describes floor panel extensions as subcomponents of the "floor panel." Appx107 at 14:40-41; Appx108 at 16:42-44; Appx109 at 17:10-14; Appx114 at 27:30-31; Appx115 at 29:52-54, 30:18-21, 30:36-38.

There was no genuine dispute of material fact that the side post gussets of the Accused Cars were not "extensions" of the floor panel because they do not extend from (i.e., contact) the floor panel. Summary judgment was proper.

### III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO GIVE NSC ADDITIONAL DISCOVERY AFTER SUMMARY JUDGMENT

Invoking "[f]undamental notions of fair play," NSC complains that it "and its expert [should have been] given an opportunity to [re]assess infringement" after summary judgment. Br. 50.

For three reasons, the district court did not abuse its discretion in refusing to give NSC additional discovery after summary judgment.

First, NSC forfeited its right to request additional discovery by never filing a Rule 56(d) motion at all, let alone "before the hearing," as required, *WebZero, LLC v. ClicVU, Inc.*, 392 F. App'x 863, 868 (Fed. Cir. 2010), or with the required affidavit. Fed. R. Civ. P. 56(d). NSC only ever tried to request discovery in supplemental summary judgment briefs. Appx12144-12145;  Appx12296-12297.[17]  But "[m]ere references in memoranda . . . to a need for discovery do not qualify as motions under Rule 56(d)." *WebZero, LLC*, 392 F. App'x at 868 (cleaned up); *see also Cal. ex rel. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779

---

[17] NSC claims that it requested discovery in its proposed motion for reconsideration, Br. 50, but it did not. *See* Appx13175-13176.

(9th Cir. 1998); *Askan v. FARO Techs., Inc.,* No. 2022-2117, 2023 WL 4101351, at *5 (Fed. Cir. June 21, 2023).

Second, NSC was on notice throughout the case of Greenbrier's non-infringement positions, but never addressed them. As explained above, *supra* at pp.26-28, after NSC changed its infringement theory, Greenbrier explained its non-infringement positions in an interrogatory response well before fact discovery closed and before expert discovery opened. *E.g.*, Appx11778 (Greenbrier's non-infringement interrogatory response stating that "the side post gusset [of the Accused Cars] ***does not contact*** the floor panel . . . It is thus ***not an extension*** of the floor ***panel*** (i.e., it is not a floor panel extension) or otherwise part of the floor panel." (emphases added)); Appx11817; Appx11854; Appx11875; Appx11915; Appx11947; Appx11967; Appx12009; Appx12042; Appx12064; Appx12093; Appx12119-12120. And Greenbrier's technical expert agreed with Greenbrier's position in expert discovery. Appx5404-5405 at ¶ 155. Thus, Greenbrier did not "change[] course at summary judgment," as NSC alleges. Br. 22. Rather, NSC chose not to argue or to obtain evidence that the side post gussets of the Accused Cars were allegedly floor panel extensions.

Third, the due process afforded to NSC was, in a word, extraordinary. Between claim construction and summary judgment, the district court received 315 pages of briefing and heard five days of oral argument, including 838 demonstrative slides.[18] And the district court ordered and received supplemental briefing specifically on the very claim term ("floor panel") that is the subject of NSC's appeal. Appx11615-11618. As if that weren't enough, the district court expressly gave NSC an opportunity to be heard on the "floor extension"-versus-"floor panel extension" issue. Appx11639-11640 at 21:22-22:7.

NSC and its expert were not legally required to limit their evidence to how they allegedly (mis)understood the district court's claim construction. *See* Br. 49. Parties can develop evidence to support alternative theories of infringement, and can make an offer of proof at trial. *See Pac. Marine Ctr., Inc. v. Silva*, 553 F. App'x 671, 675 (9th Cir. 2014) (appellant "forfeited [an] issue on appeal by failing to make an offer

---

[18]   Appx257-341;  Appx1027-1070;  Appx1359-1400;  Appx1621-2031; Appx12784-13132;   Appx28-56;   Appx2491-2503;   Appx2520-2542; Appx28-32;   Appx2543-2613;   Appx9995-10061;   Appx11049-11113; Appx11615-11618; Appx11733-11751; Appx12131-12151; Appx12159-12283.

of proof at trial" (citing *Tennison v. Circus Circus Enters., Inc.,* 244 F.3d 684, 689 (9th Cir. 2001)); *see DeMendoza v. Huffman*, 1 F. App'x 665, 666 (9th Cir. 2001) (failure to make offer of proof resulted in waiver).

All the cases NSC cites, Br. 48-51, involved sua sponte grants of summary judgment, and all without affording the parties a chance to be heard and present arguments and evidence. *Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.*, 541 F. App'x 964, 973-74 (Fed. Cir. 2013); *TNS Media Rsch., LLC v. Tivo Rsch. & Analytics, Inc.*, 629 F. App'x 916, 939 (Fed. Cir. 2015); *Eon-Net LP v. Flagstar Bancorp*, 249 F. App'x 189, 193-95 (Fed. Cir. 2007).

Here, in contrast, there was no sua sponte summary judgment, and the district court expressly invited NSC to present its positions. Appx11615-11618. *See Stern v. SeQual Techs., Inc.*, 840 F. Supp. 2d 1260, 1268-75 (W.D. Wash. 2012), *aff'd*, 493 F. App'x 99 (Fed. Cir. 2012) (construing claim term, declining patentee's request for additional discovery for failure to comply with Rule 56(d), and granting summary judgment of non-infringement).

The district court did not abuse its discretion in denying NSC additional discovery at summary judgment.

## CONCLUSION

The district court's judgment should be affirmed.

Dated: July 1, 2024                    By: /s/ J. Pieter van Es
                                       J. Pieter van Es
                                       pvanes@bannerwitcoff.com
                                       Marc S. Cooperman
                                       mcooperman@bannerwitcoff.com
                                       Janice V. Mitrius
                                       jmitrius@bannerwitcoff.com
                                       Brian T. Apel
                                       bapel@bannerwitcoff.com
                                       BANNER & WITCOFF, LTD.
                                       71 South Wacker Drive, Suite 3600
                                       Chicago, IL 60606
                                       Telephone: 312.463.5000

                                       *Attorneys for Defendants-Appellees*
                                       *Greenbrier-Concarril LLC,*
                                       *Greenbrier Leasing Company, LLC,*
                                       *Greenbrier-Gimsa, LLC*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1453

**Short Case Caption:** National Steel Car Ltd. v. Greenbrier-Concarril LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes _13,956_ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: _07/01/2024_

Signature: _/s/ J. Pieter van Es_

Name: _J. Pieter van Es_

Save for Filing